IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CARLTON EDWARD EUGENE,

      Petitioner,

v.                                            Case No.  3:15cv0073-MCR/CAS

JULIE L. JONES, Secretary,
Department of Corrections,

      Respondent.
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

Petitioner, Carlton Edward Eugene, a prisoner in the custody of the

Florida Department of Corrections, represented by counsel, filed a petition

for writ of habeas corpus pursuant to 28 U.S.C. § 2254, with exhibits, on

February 27, 2015.  ECF No. 1.  After being directed to file an answer,

motion or other response to the petition, Respondent filed an answer, with

exhibits, on September 30, 2015.  ECF No. 8.  Petitioner filed a notice that

a reply would not be filed.  ECF No. 11.

The matter was referred to the undersigned United States Magistrate

Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

Northern District of Florida Local Rule 72.2(B).  After careful consideration

of all the issues raised, the undersigned has determined that no evidentiary

hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the

pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief and this amended § 2254 petition should be

denied.

## **Facts and Procedural History**

On April 16, 2007, Petitioner was charged by a fourth amended

information with three counts: Count (1) trafficking in cocaine on or

between April 2 and April 3, 2006, in Escambia County, Florida, in the

amount of 400 grams or more, but less than 150 kilograms, in violation of

section 893.135(1)(b)1.c, Florida Statutes; Count (2) actual or constructive

possession of marijuana, less than 20 grams, on or about April 3, 2006, in

Escambia County, Florida, in violation of section 893.13(6)(b), Florida

Statutes; and Count (3) conspiracy to traffic in cocaine on or between April

2 and April 3, 2006, in the amount of 400 grams or more, but less than 150

kilograms, or any mixture containing same, in Escambia County, Florida, in

violation of sections 893.135(1)(b)1.c. and 893.135(5), Florida Statutes.

Ex. A at 4.[1]

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through X
submitted with Respondent's answer, ECF No. 8, unless otherwise indicated.

Jury trial was held on April 16, 2007, and April 20, 2007, Ex. D and E, at which the jury found Petitioner guilty on Count 1 of the lesser included offense of possessing cocaine with intent to sell, manufacture, or deliver. Ex. E at 335; Ex. A at 54.  He was found guilty as charged on Counts 2 and 3.  Ex. E at 335; Ex. A at 54.  Judgment and sentence were entered on June 14, 2007, Ex. A at 77, and Petitioner was sentenced on Count 1 to 15 years, to be served concurrently with the sentence for Count 3, a 20-year sentence with a 15-year minimum mandatory term.  Ex. A at 79-81. Petitioner was given 57 days credit for time served, Ex. A at 82, and was sentenced to time served for Count 2.  Ex. A at 76.

Petitioner appealed, raising three claims of error.[2]  Ex. G.  On February 22, 2008, after the filing of the notice of appeal from the judgment and sentence but before the initial brief was filed, Petitioner filed a motion to correct sentencing error under Florida Rule of Criminal Procedure 3.800(b)(2).  Ex. C at 139.  On March 12, 2008, the trial court entered an order correcting the scoresheet error but denying a new sentencing hearing because the sentence would be the same.  Ex. C at 143-146.  The state

---

[2] The claims raised on direct appeal from his conviction and sentence were: (1) the evidence was insufficient; (2) the state improperly impeached its own witness; and (3) the trial court erred in denying a new sentencing hearing after granting Petitioner's 3.800(b)(2) motion to correct sentencing error.  Ex. G.

First District Court of Appeal affirmed all claims of error per curiam without opinion on July 20, 2009, and the mandate was issued August 5, 2009. Ex. I. *See* Eugene v. State, 12 So. 3d 754 (Fla. 1st DCA 2009) (table). On December 17, 2009, Petitioner filed a pro se motion to reduce or modify his sentence. Ex. J. The motion was denied by order dated January 22, 2010. Ex. J.

Petitioner, proceeding pro se, filed his initial motion for post-conviction relief under the mailbox rule pursuant to Florida Rule of Criminal Procedure 3.850 on May 26, 2010. Ex. K at 1-48. An amended Rule 3.850 motion was later filed.[3] Ex. K at 49-126. The motion was denied without a hearing, Ex. L at 127, and Petitioner's motion for rehearing was denied. Ex. L at 271, 282. The state First District Court of Appeal affirmed the denial of post-conviction relief per curiam without opinion on September 27, 2011, and Petitioner's motion for rehearing en banc and for a written

---

[3] Petitioner's claims in his amended Rule 3.850 motion were: (1) Ineffective assistance of counsel (IAC) for failing to properly object and preserve the trial court's error in allowing the prosecutor to improperly impeach its own witness, Ex. K at 55; (2) IAC in failing to object to improper admission of hearsay, Ex. K at 61; (3) IAC in failing to properly move for a judgment of acquittal, thus foreclosing appellate review of issue of sufficiency, Ex. K at 67; (4) IAC in failing to object to improper jury instruction on constructive possession as it relates to joint possession of the premises, and failing to request a special instruction, Ex. K at 70; (5) IAC in failing to move for a new trial, Ex. K at 77; and (6) IAC in failing to timely file a motion to suppress the evidence, Ex. K at 80.

opinion was denied November 9, 2011.[4]  Ex. P.  The mandate was issued November 29, 2011.  Ex. P.  *See* Eugene v. State, 75 So. 3d 271 (Fla. 1st DCA 2011) (table).

On November 21, 2011, Petitioner filed a petition for writ of habeas corpus in the state circuit court contending that he was being held illegally because section 893.13, Florida Statutes, had been held to be facially unconstitutional, thus implicating the constitutionality of his conviction for violation of section 893.135(1)(b), Florida Statutes.[5]  Ex. Q at 3-5.  The circuit court denied relief, Ex. Q at 6-7, and Petitioner appealed.  The denial of relief was affirmed per curiam on August 23, 2012.  Ex. Q at 40. Petitioner's motion for rehearing was denied on October 9, 2012, Ex. Q at 46, and the mandate was issued on January 10, 2013.  ECF No. 8-1 at 10-11 (docket, state First District Court of Appeal Case No. 1D12-334).  *See* Eugene v. State, 102 So. 3d 670 (Fla. 1st DCA 2012) (table).

Petitioner filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) on December 5, 2012, raising a double jeopardy claim.  (Ex. R at 1-5).  The circuit court denied relief, Ex. R

---

[4]  Petitioner appealed denial of each of the claims raised in his amended initial Rule 3.850 motion.  Ex. N.

[5] Petitioner cited Shelton v. Sec'y, Dep't of Corr., 802 F. Supp. 2d 1289 (M.D. Fla. July 27, 2011), but that decision was reversed in Shelton v. Sec'y, Dep't of Corr., 691 F.3d 1348 (11th Cir. 2012), cert. denied, Shelton v. Crews, 133 S. Ct. 1856 (2013).

at 6, and denied Petitioner's motion for rehearing.  Ex. R at 16, 24.

Petitioner appealed to the state First District Court of Appeal, Ex. R at 25,

and the trial court's order was affirmed on October 17, 2013, without written

opinion.  Ex. S at 1.  Petitioner's motion for rehearing and for a written

opinion, Ex. S at 2, was denied, Ex. S at 5, and the mandate was issued on

December 20, 2013.  Ex. S at 6.  *See* Eugene v. State, 145 So. 3d 100

(Fla. 1st DCA 2013) (table).

Petitioner filed a second Rule 3.850 motion on July 18, 2013, Ex. T

at 1, and then an amended second Rule 3.850 motion, with memorandum

of law.[6]  Ex. T at 32, 63.  The motion was denied without a hearing based

on the trial record.  Ex. T at 74-81.  Petitioner's appeal was affirmed by the

state First District Court of Appeal per curiam without opinion on October

13, 2014, and the mandate was issued on November 10, 2014.  Ex. V at 1-

2.  *See* Eugene v. State, 150 So. 3d 1136 (Fla. 1st DCA 2014) (table).

On February 11, 2014, Petitioner filed a Rule 3.800(a) motion to

correct illegal sentence raising another double jeopardy claim.  Ex. W at 1.

The state circuit court denied the motion, Ex. W at 10, and Petitioner's

appeal, Ex. W at 14, was affirmed per curiam without opinion on

---

[6] The amended second Rule 3.850 motion alleged newly discovered evidence.  Ex. T at 37.

September 30, 2014.  Ex. X.  The mandate was issued on October 28,

2014.  Ex. X at 2.  *See* <u>Eugene v. State</u>, 149 So. 3d 3 (Fla. 1st DCA 2014)

(table).

Petitioner filed his petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 in this Court raising the following grounds for relief:

> (1)  Trial counsel rendered ineffective assistance in violation of the Sixth Amendment to the United States Constitution by failing to properly object to and preserve the claim of error that the trial court abused its discretion in allowing the State to improperly impeach its own witness.  ECF No. 1 at 18.

> (2) Trial counsel rendered ineffective assistance in violation of the Sixth Amendment to the United States Constitution by failing to object to the trial court's improper admission of inadmissible hearsay.  ECF No. 1 at 22.

> (3) Trial counsel rendered ineffective assistance in violation of the Sixth Amendment to the United States Constitution by failing to move for a judgment of acquittal on grounds of insufficiency of the evidence, thereby foreclosing appellate review.  ECF No. 1 at 25.

> (4) Trial counsel rendered ineffective assistance in violation of the Sixth Amendment to the United States Constitution by failing to object to an erroneous jury instruction and by failing to request a special instruction on the law of constructive possession as it pertains to joint possession of the premises, and further failing to preserve the issue for appellate review.  ECF No. 1 at 27.

> (5) Trial counsel rendered ineffective assistance in violation of the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution by failing to move for a new trial. ECF No. 1 at 30.

> (6) Trial counsel rendered ineffective assistance in violation of the Sixth Amendment to the United States

Constitution by failing to file a motion to suppress the evidence relied on to convict.  ECF No. 1 at 31.

(Undesignated Ground) The cumulative effect of the individual grounds stated above, when taken together in their totality, amount to ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  ECF No. 1 at 35

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

 "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.' " Cullen, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b). The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)). In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Secretary, Florida Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)). Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993). In order to demonstrate

cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497 (1991) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice.  Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to satisfy the miscarriage of justice exception, the Petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut the presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).

 For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690).  Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question

'is not whether a federal court believes the state court's determination'
under the <u>Strickland</u> standard 'was incorrect but whether that determination
was unreasonable—a substantially higher threshold.' " <u>Knowles v.
Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550
U.S. 465, 473 (2007)). "And, because the <u>Strickland</u> standard is a general
standard, a state court has even more latitude to reasonably determine that
a defendant has not satisfied that standard." <u>Mirzayance</u>, 556 U.S. at 123.
It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim
evaluated under the § 2254(d)(1) standard." *Id.*

## **<u>Ground 1: Counsel's Failure to Object to State's Impeachment</u>**

Petitioner contends in this ground that his trial counsel rendered
ineffective assistance in violation of the Sixth Amendment by failing to
properly object to and preserve the claim of error that the trial court abused
its discretion in allowing the State to impeach Christopher Stanley, its own
witness. Petitioner contends that trial counsel should have objected not
only on the ground that the State called Stanley in order to impeach him,
but that Stanley's testimony did not meet the test for allowing a party to
impeach its own witness. The Respondent contends that the circuit court
was correct in denying the claim because counsel did object to the

impeachment, that the impeachment was proper, and that Petitioner has failed to demonstrate prejudice.  ECF No. 8 at 4-5.

At the jury trial, evidence was presented that was obtained from judicially authorized wiretaps on certain telephone numbers including Christopher Stanley's.  One of calls recorded on April 2, 2006, indicated that Stanley had recently received a shipment of cocaine.  Ex. D at 128-29. The Florida Department of Law Enforcement (FDLE), in conjunction with the Pensacola Police Department, obtained search warrants for various residences, including Stanley's and Petitioner's.  Ex. D at 125-129.  One of the calls that the State offered to prove the involvement of Stanley and Petitioner in the possession and trafficking of cocaine occurred on April 2, 2006, at 9:39 p.m.  Ex. D at 130.

Prior to Stanley's testimony, defense counsel objected, stating that he anticipated a problem concerning impeachment because there had been inconsistent statements in interviews and deposition.  Counsel said that the deposition testimony was "materially different" from what was said in an earlier unrecorded statement.  Ex. D at 139-41.  The objection was overruled and Stanley testified that in April 2006 he was living on New York Drive in Escambia County, Florida, across the street from Petitioner, who is his brother.  Ex. D at 158-59.  Stanley testified that he received a kilogram

of cocaine from Louisiana sometime prior to his arrest on April 3, 2006. The cocaine was in the form of a brick and came wrapped in plastic wrap and duct tape. The cocaine was then broken down and put into baggies, but he said he did not know where it was broken down. Ex. D at 160-61. The prosecutor referred Stanley to his deposition taken April 13, 2007, and after reviewing the deposition, Stanley then testified that he thought the cocaine was broken down at his brother's house. Ex. D at 162.

Stanley was also asked about the telephone call he received on April 2, 2006, from Kelly Dede, which had been recorded by FDLE. Ex. D at 163. Dede, who testified earlier under a grant of immunity, lived with Christopher Stanley in April 2006. When she testified, Dede identified her voice as one of the voices in the April 2, 2006, recorded telephone conversation marked State's Exhibit 1, which was played for the jury. Ex. D at 146-49. In the recorded call, Stanley asked Dede where Petitioner was and her response was that he was "right here."[7]  At the time, Dede was at Petitioner's home. Ex. D at 146. Stanley told Dede to ask Petitioner if he "did that" to which the answer was, "Ran out of bags, stopped at 24." Ex. D at 164. Petitioner was giving the answers to Dede during the recorded call,

---

[7] Stanley identified his voice as the other voice in the call played for the jury. Ex. D at 63.

including that he ran out of bags, and the answers were related back to

Stanley in the call.  Ex. D at 151.  Dede also testified that the bags referred

to were sandwich bags used to put cocaine in.  Ex. D at 151.  She testified

that she did not see the cocaine until she was leaving the house, and then

saw the cocaine in sandwich bags.  Ex. D at 151-52.  Dede testified that

she did not know if the cocaine found in Stanley's residence when the

search warrant was executed the next day was the same cocaine she saw

in bags at Petitioner's residence.  Ex. D at 152.  She testified on cross-

examination that a cousin, Raymond Green, nicknamed "Ruff," was a

partner in the cocaine business with Stanley and used Petitioner's

residence to package cocaine.  Ex. D at 154.  Dede denied ever seeing

Petitioner packaging cocaine, and said she did not recall telling law

enforcement that she saw him doing so with Green.  Ex. D at 154, 156.

During Stanley's testimony, he said he was not sure if the kilogram he

referred to earlier was at Petitioner's house.  He also testified that the bags

mentioned in the recorded call with Dede referred to party favor bags for

his niece.  Ex. D at 166, 168.  When the prosecutor attempted to further

question Stanley about the bags, Petitioner's counsel objected and said he

was raising the same issue again concerning improper impeachment.  The

objection was overruled.  Ex. D at 167.

Outside the presence of the jury, the prosecutor proffered a second recorded telephone call also recorded on April 2, 2006.  Ex. D at 169.  The call was played for witness Stanley, who said the voices were his and another person named "Kevin."  Ex. D at 170, 174.  In the call, when told the "rest of them bags" were being sent over, the other voice said "I had to stop.  I did half.  Then I stopped and ate, then I did the rest.  I had to stop."  Ex. D at 170.  Stanley denied the second person on this particular call was Petitioner.  Ex. D at 172.  The call was not played for the jury at that time.

After the jury returned, counsel renewed the objection that he made prior to Stanley's testimony, without elaboration.  His objection was overruled.  Ex. D at 178.  The prosecutor then questioned Stanley concerning whether he had ever told FDLE Agent Lawson that Petitioner was the one bagging the cocaine.  Stanley denied it, and further testified that Petitioner "was totally not involved."  Ex. D at 178-79.  Stanley conceded that when the search warrant was executed on his own residence, 27 baggies of cocaine were found in a drawer.  Ex. D at 179.  He testified the cocaine was already at his house and had been cut up by Raymond Green, Ex. D at 180, but later denied saying the cocaine was cut up at his house.  Ex. D at 182.  When the prosecutor asked Stanley, "Would it surprise you that Ms. Dede said he [Green] was over at Carlton

Eugene's house?" defense counsel objected that the prosecutor "was

arguing." Ex. D at 180. The trial judge overruled the objection and Stanley

testified that Raymond Green probably brought the bags of cocaine over to

Stanley's house. Ex. D at 181. Testimony was later admitted that plastic

wrap, which is often used to wrap bricks of cocaine, duct tape, and dryer

sheets, which are often used to mask the odor of cocaine, were found in

Petitioner's trash during the search. The plastic wrap had cocaine residue

on it. Ex. E at 207-208, 224.

After Stanley's testimony, the State recalled FDLE Special Agent Eli

Lawson to testify that Stanley told him he received a kilogram of cocaine

and brought it to Petitioner's residence and "then employed Mr. Eugene to

break that kilo down into ounce size quantities." Ex. D at 190. Prior to

Agent Lawson's testimony, Defense counsel objected on the same grounds

that he had objected to the prosecutor impeaching the testimony of

Stanley. Ex. D at 190. The objection was overruled. Agent Lawson further

testified that in a later conversation, after Stanley's federal plea agreement,

Stanley reiterated that he employed Petitioner to break down the kilo and

showed him how to scoop it out, weigh it, and put it into plastic sandwich

bags. Ex. D at 191. Agent Lawson said that later, in a conversation at the

jail, Stanley refused to provide information as to who participated in the

second recorded telephone call, stating that he was not going to send any more of his family to jail.[8]  Ex. D at 191.

The State also recalled Kelly Dede and then played the second recorded telephone call for the jury.  Ex. D at 187.  Dede testified that the voices on the second recorded telephone call were those of Stanley and Petitioner.  Ex. D at 187-88.  In the call, one of the voices, later said to be Stanley's, explained that he was going to "send the rest of the bags over there by Ruff."  The other voice, said to be that of Petitioner, stated that he had done half and had to stop.  Ex. D at 187.

Petitioner contended in the circuit court in his initial amended Rule 3.850 motion that trial counsel made only a general objection to the state impeaching its own witness, and failed to further argue that the witness's testimony was not contradictory and therefore not subject to being impeached.  Ex. K at 56.  The circuit court denied the claim, ruling that trial counsel did object to the prosecutor impeaching his own witness and, further, that the impeachment was proper, and that no prejudice was shown.  Ex. L at 129-31.

---

[8] At the close of the State's case, defense counsel unsuccessfully moved for mistrial, arguing that the improper impeachment of Stanley's alleged prior statements became a feature of the trial.  Ex. E at 328.

The circuit court, in denying relief, noted the testimony of FDLE Agent Lawson, who testified that on the day the search warrant was executed, Stanley told him that he brought a kilogram of cocaine to Petitioner's residence and employed Petitioner to break it down into ounce size quantities. Ex. D at 190. The circuit court found that this testimony contradicted Stanley's testimony that Petitioner was totally not involved with breaking down the cocaine. The circuit court order also noted the conflict between Stanley's testimony that the "bags" referred to in the recorded call were birthday bags versus the testimony of Dede that the bags referred to by Petitioner during the first recorded telephone call were sandwich bags used to repackage cocaine. Ex. L at 130.

The circuit court order concluded that, based on the evidence presented and Stanley's testimony, trial counsel could not have prevented the state from thoroughly impeaching Stanley, and that no prejudice could be shown, citing the standard set forth in Strickland. Ex. L at 127-31. The circuit court also held that prejudice in failing to preserve an issue for appeal, rather than its effect on the jury's verdict, is not a ground for finding

deficient performance, citing <u>Carratelli v. State</u>, 961 So. 2d 312, 320 (Fla. 2007).[9]

In his § 2254 petition in this Court, Petitioner again contends that counsel was deficient in making only a general objection to the state impeaching Stanley's testimony, and that prejudice occurred because Stanley's testimony allowed the State to recall FDLE Special Investigator Lawson to testify to hearsay obtained in an out-of-court interview of Stanley.  ECF No. 1 at 21.  Petitioner argues that "[h]ad counsel properly objected and set forth a specific argument stating that the witness was incapable of being impeached with statements that were not contradictory as shown on the face of the record, the Court would have no choice but to disallow impeachment of the State's witness, therefore changing the outcome of the trial."  ECF No. 1 at 21.  This claim is without merit.

The circuit court was correct that trial counsel was not deficient in failing to make a more specific objection to the State's impeachment of Stanley.  First, as the circuit court noted, counsel did object to the State calling Stanley for purposes of impeachment.  Prior to Stanley's testimony,

---

[9] <u>Carratelli</u> held that once a conviction is final, the test for prejudice in post-conviction is "very different" than the test for prejudice on direct appeal.  961 So. 2d at 320 (quoting <u>Sanders v. State</u>, 946 So. 2d 953, 949 (Fla. 2006)).  "Therefore, 'an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.'  <u>Witt v. State</u>, 387 So. 2d 922, 925 (Fla. 1980) (quoting <u>United States v. Addonizio</u>, 442 U.S. 178, 184 (1979))."  <u>Id.</u>

counsel objected, stating that he anticipated a problem arising concerning

impeachment because there had been inconsistent statements in

interviews and deposition.  Ex. D at 139-41.  Counsel renewed his

objection several times.  Regardless of the quality or extent of defense

counsel's objection, the impeachment of Stanley's testimony was proper.

Section 90.608, Florida Statutes, a provision of the Florida Evidence

Code, permits a party to impeach its own witness.  That provision states in

pertinent part:

> Any party, including the party calling the witness, may attack
> the credibility of a witness by:
>
> (1) Introducing statements of the witness which are inconsistent
> with the witness's present testimony.
> . . . .
> (5) Proof by other witnesses that material facts are not as
> testified to by the witness being impeached.

§ 90.608(1), (5), Fla. Stat. (2006).  Under Florida law, it is improper to call a

witness "merely as a device to place the impeaching testimony before the

jury."  Bearden v. State, 161 So. 3d 1257, 1265 (Fla. 2015).  However,

Petitioner has not demonstrated that the State called witness Stanley

merely as a device to place the impeaching testimony before the jury.

Stanley's testimony was relevant to establish a number of facts, including

his relationship with Petitioner and that a kilogram of cocaine was brought

in and broken down into smaller amounts into sandwich bags.  During that

testimony Stanley also testified that he did not know where it was broken down.  Ex. D at 160-61.  This testimony was subject to impeachment because Stanley had testified in his deposition taken April 13, 2007, that he thought the cocaine was broken down at his brother's house.  Ex. D at 162.  Stanley's testimony was also probative of his association with Petitioner and his conversation with Petitioner about bags on April 2, 2006.  *See, e.g.*, Wade v. State, 156 So. 3d 1004, 1021 (Fla. 2014) (holding that the witness was not called for the primary purpose of impeachment where the witness's testimony was probative of the defendant's association with a codefendant as well as defendant's whereabouts at the time of the crime).

Moreover, because that earlier testimony was also under oath, it cannot be said that the prosecutor necessarily knew which version Stanley would present to the jury until that testimony was presented.  Similarly, Stanley's testimony that Petitioner was totally uninvolved with breaking down the cocaine was subject to impeachment by his prior inconsistent statements to Agent Lawson that he brought a kilogram of cocaine to Petitioner's residence and employed Petitioner to break it down into ounce size quantities.  Ex. D at 190.  *See, e.g.*, United States v. Weise, 606 F. App'x 981, 986 (11th Cir. 2015) (unpublished) (holding that government witness who denied defendant was violent was properly impeached by

government's presentation of the testimony of an agent who heard the witness say she was beaten all the time by the defendant); United States v. Sisto, 534 F.2d 616, 622 (5th Cir. 1976) ("[I]f on cross-examination the witness has denied making the state, or has failed to remember it, the making of the statement may be proved by another witness.").

Under Florida law, a trial judge's ruling on the admissibility of evidence will not be disturbed absent a clear abuse of discretion.  *See* Delhall v. State, 95 So. 3d 134, 155 (Fla. 2012); Valle v. State, 70 So. 3d 530, 546 (Fla. 2011).  This discretion is limited by the rules of evidence and by the principles of stare decisis.  McDuffie v. State, 970 So. 2d 312, 326 (Fla. 2007).  Under the rules of evidence and Florida law, the impeachment of Stanley was proper, and counsel was not deficient for failing to lodge a more detailed objection.

Moreover, even if counsel should have made a more specific ruling, Petitioner has failed to demonstrate prejudice as required by the second prong of Strickland.  If further objection had been made, it is unlikely that the trial court would have reversed its ruling and sustained defense counsel's objection.  Petitioner's responses, as given to Kelly Dede during the recorded telephone call played for the jury, included reference to running out of bags.  Kelly Dede testified that the bags referred to by

Petitioner during the telephone call were sandwich bags used to store cocaine. Plastic wrap similar to that used to wrap bricks of cocaine, and dryer sheets sometimes used to mask the scent of cocaine, were found in Petitioner's trash and bore cocaine residue. Ex. E at 205-07, 223-24. Dede did not recall, but did not deny, telling officers that Raymond Green and Petitioner were in the living room of Petitioner's home repackaging cocaine into one ounce sizes. Twenty-seven sandwich bags containing 736 grams of cocaine were later found in Petitioner's brother's home. Ex. D at 195; Ex. E at 233. Therefore, evidence connected those bags of cocaine to Petitioner's actions in breaking up the kilo of cocaine and repackaging it. Petitioner failed to demonstrate that but for counsel's alleged deficiency, there is a reasonable probability that the result of the proceeding would have been different. *See* Strickland, 466 U.S. at 694.

The state First District Court of Appeal affirmed the trial court's ruling that ineffective assistance of counsel had not been shown. In federal habeas review, the question is not whether the state courts' determination was incorrect, but whether it was unreasonable, which is a substantially higher threshold. Mirzayance, 556 U.S. at 123. Petitioner was required to demonstrate that it was necessarily unreasonable for the state court to conclude that he had not overcome the strong presumption of competence

and that he had failed to undermine confidence in the jury's verdict.  *See*

Cullen, 563 U.S. at 190.  These showings have not been made.

The state courts' adjudication of the claim has not been shown to be

contrary to, or involving an unreasonable application of, clearly established

federal law, as determined by the Supreme Court.  Nor was the

adjudication based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding.  For these reasons,

habeas review as to Ground 1 should be denied.

## Ground 2: Counsel's Failure to Object to Inadmissible Hearsay

In Ground 2, Petitioner contends that trial counsel provided ineffective

assistance in violation of the Sixth Amendment in failing to object on

hearsay grounds to certain testimony of Special Agent Lawson.  ECF No. 1

at 22.  The testimony that Petitioner contends contained inadmissible

hearsay was the following, which was presented as impeachment to the

testimony of Christopher Stanley:

> Q [Prosecutor].  Mr. Lawson, were you present the night the search warrant was executed on Mr. Stanley's house?
>
> A.  Yes, sir, in the morning time.
>
> Q.  Were you present when the Miranda rights were read to him?
>
> A. Yes, sir, I was.
>
> Q. At that point in time did he give you any indications as to what Mr. Eugene's involvement was?

A. Yes, sir.  He said he had delivered - -

Mr. ROLLO [defense counsel]:  For the record I am going to interpose the same objection I raised previously about the purpose of calling the antecedent witnesses to which this witness is going to answer this particular question.

THE COURT:  Thank you.  Overruled.

Q. [Prosecutor].  Go ahead, sir.

A. Mr. Stanley stated that morning that he received an entire kilo of cocaine and brought it to Mr. Eugene's residence at 700 New York, then employed Mr. Eugene to break that kilo down into ounce size quantities.

Q. Now did you have an additional interview with him after that, after his federal plea agreement I guess?

A. Yes, sir, I did.

Q. And did he indicate anything more in the way of showing how to break it down?

A. He reiterated his statements that he employed Mr. Eugene to break it down.  He even went as far to say that he showed him how to scoop it out with a spoon, put it on a digital scale, and then weigh that out to 28 grams, put that into a plastic baggie and continue on with the entire kilo.

Ex. D at 190-91.  This testimony was presented as prior inconsistent statements after Stanley denied ever telling the FDLE agent that Petitioner was bagging up the cocaine, and Stanley testified that Petitioner "was totally not involved."  Ex. D at 178-79.

Petitioner contends that the evidence was actually introduced as substantive evidence and should have been objected to as inadmissible hearsay as a basis to exclude it from trial and to preserve that error as an issue for appeal.  ECF No. 1 at 24.  Petitioner contends that both the

deficiency prong and the prejudice prong of Strickland are satisfied.

Respondent counters that Agent Lawson's testimony was proper

impeachment and was not introduced for the truth of the matter asserted,

and that any objection would have been meritless. ECF No. 8 at 6.

The post-conviction court denied relief on this ground, stating that

Agent Lawson's testimony was a prior inconsistent statement constituting

proper impeachment based on Stanley's inconsistent trial testimony. Ex. L

at 131. Petitioner appealed the denial of relief on this claim, Ex. N at 17,

and the state First District Court of Appeal affirmed. Ex. P.

Section 90.608, Florida Statutes (2006), a provision of the Florida

Evidence Code, provides that any party, including the party calling the

witness, may attack the credibility of the witness by introducing statements

by the witness that are inconsistent with the witness's present testimony.

§ 90.608(1), Fla. Stat. Under that statute, "introduction of a prior statement

that is inconsistent with a witness's testimony is also one of the main ways

to attack the credibility of a witness." Pearce v. State, 880 So. 2d 561, 569

(Fla. 2004) (citing § 90.608(1), Fla. Stat.). *See also* McCray v. State, 919

So. 2d 647, 649 (Fla. 1st DCA 2006) (holding that police officer's testimony

concerning the description of defendant that the victim's mother gave to

him was not hearsay under § 90.801(1)(c) because it was to be used to

impeach the mother's trial testimony rather than to prove the content of the mother's description).

   "To be inconsistent, a prior statement must either directly contradict or be materially different from the expected testimony at trial.  The inconsistency must involve a material, significant fact rather than mere details."  Pearce, 880 So. 2d at 569 (citing State v. Smith, 573 So. 2d 306, 313 (Fla. 1990)).  The witness must be given the opportunity to explain or deny the prior statement before it is admissible.  *Id.*  These requirements were met in this case.  Stanley was asked if he made the prior statement, which he denied.  Ex. D at 178-79.  It cannot be said that the prosecutor knew that Stanley would give testimony contrary to what he had previously told the agent.  The evidence presented prior to Stanley's testimony directly linked Stanley to the cocaine being bagged at Petitioner's house and linked Petitioner to the repackaging of the cocaine.  Stanley had previously informed officers that he engaged Petitioner to break up the cocaine into smaller quantities.  Dede testified at trial that the bags Petitioner referred to when he provided responses to Stanley in the telephone conversation, in which Dede was the go-between, were bags to hold cocaine.  Thus, when Stanley testified, it was not unreasonable for the prosecutor to expect him, when under oath, to testify consistent with those same facts.  When

inconsistent testimony was given, the rule allowed impeachment by admission of the prior statements.

The prior statements, to be admissible as impeachment and not inadmissible hearsay must be offered not as substantive evidence but as evidence of lack of credibility of the witness.  Statements offered for impeachment and not for the truth of the matter asserted are not hearsay. *See* United States v. Vasquez, 225 F. App'x 831, 833 (11th Cir. 2007) (unpublished) (regarding Fed. R. Evid. 607, which provides that the credibility of a witness may be attacked by any party, including the party calling the witness).

In the present case, the prosecutor did not attempt to characterize the prior inconsistent statement as substantive evidence.  In closing argument, when the prosecutor referred to the prior inconsistent statements, he argued they showed that Stanley's in-court testimony was given in an attempt to protect his brother and lacked credibility.  *See* Ex. E at 284, 292. Because the impeachment was proper, defense counsel was not deficient for failing to object on hearsay grounds when Agent Lawson testified to Stanley's prior inconsistent statements.

Moreover, Petitioner has failed to show a reasonable probability that but for counsel's alleged error, the result of the trial would have been

different—a reasonable probability being one sufficient to undermine
confidence in the proceeding. <u>Strickland</u>, 466 U.S. at 694. "It is not
enough 'to show that the errors had some conceivable effect on the
outcome of the proceeding.'" <u>Richter</u>, 562 U.S. at 104 (quoting <u>Strickland</u>,
466 U.S. at 693). "Counsel's errors must be "so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable." *Id.* (quoting
<u>Strickland</u>, 466 U.S. at 687, 104 S.Ct. 2052. "And, because the <u>Strickland</u>
standard is a general standard, a state court has even more latitude to
reasonably determine that a defendant has not satisfied that standard."
<u>Mirzayance</u>, 556 U.S. at 123.

The state circuit court found counsel was not deficient in failing to
object on the grounds of hearsay and the state district court of appeal
affirmed. Ex. P. These rulings have not been shown to be contrary to, or
involving an unreasonable application of, clearly established federal law, as
determined by the Supreme Court. Nor has Petitioner shown that the
rulings were based on an unreasonable determination of the facts in light of
the evidence presented in the state court proceeding. For these reasons,
habeas review as to Ground 2 should be denied.

## Ground 3: Failure to Properly Move For Judgment of Acquittal

Petitioner contends in Ground 3 that trial counsel rendered ineffective assistance by failing to properly move for a judgment of acquittal at the close of the State's case.  ECF No. 1 at 25.  He alleges that trial counsel should have argued that the State failed to present sufficient proof that he had dominion and control over, and knowledge of, the cocaine, which was not found in his residence.  He contends trial counsel should have argued that the State failed to prove Petitioner had any knowledge of the plastic wrappings and tape found in the trash at his residence.  Finally, he contends that the motion for judgment of acquittal that counsel did make was insufficient to preserve the issue of sufficiency of the evidence for appeal.  ECF No. 1 at 26.  The Respondent contends that the claim is without merit.

The circuit court denied this claim, concluding that Petitioner failed to prove that he would have prevailed at trial if a more artfully worded motion had been made.  Ex. L at 131-32.  The circuit court determined that trial counsel adequately put the issue before the court whether there was sufficient evidence to send the case to the jury, and that the evidence was sufficient for that purpose.  Ex. L at 132.

At the close of the State's case, defense counsel made the following

motion for judgment of acquittal:

> MR. ROLLO [defense counsel]:  With respect to count 1,
> Your Honor, which is the trafficking count, I would respectfully
> argue to the Court that the state has not laid out a case from
> which the jury could conclude beyond all reasonable doubt that
> Mr. Eugene actually possessed or constructively possessed
> 400 grams or more of cocaine.  I think there's no question as to
> the prefatory, you know, articles that say knowingly, sell,
> purchase, manufacture, own, deliver, I don't believe there's any
> evidence of that or any evidence of him, Mr. Eugene, bringing it
> into this state.  So I think the strongest case the State could
> make was that at some point in time Mr. Eugene actually or
> constructively possessed 400 grams or more, and I don't
> believe that the jury can conclude based on the State's
> evidence beyond a reasonable doubt that in fact occurred.

Ex. E at 238-39.  Count 1 alleged that Petitioner did unlawfully and

knowingly "sell, purchase, manufacture, deliver, or bring into this state, or

did unlawfully and knowingly have actual or constructive possession of"

more than 400 grams of cocaine.  Ex. A at 4.

Count 3 alleged that Petitioner did knowingly and unlawfully agree,

conspire, combine, or confederate with Christopher Stanley to commit

those acts alleged in Count 1, including actual or constructive possession

of the cocaine.  Ex. A at 4.  At the close of the State's case, defense

counsel also made the following motion for judgment of acquittal as to

Count 3:

> MR. ROLLO: . . . . I would argue the same as to count 1 that the evidence in the light most favorable to the state does not prove an agreement and that the jury could not construe the facts in such a way that it's beyond all reasonable doubt to believe that there was an agreement between Mr. Eugene to agree, conspire, combine, or confederate with Christopher Stanley anything having to do with possession, sale or delivery, or possession of over 400 grams.

Ex. E at 239-40.  He renewed his motions prior to the jury deliberating.

These motions were far from "boilerplate" and sufficiently stated the asserted deficiencies in the State's case.  *Cf.* Brandon v. State, 768 So. 2d 1189, 1190 (Fla. 3d DCA 2000) (describing a boiler plate motion as one without grounds or argument); Whitfield v. Singletary, 730 So. 2d 314, 315 (Fla. 3d DCA 1999) (describing an insufficient "boilerplate" motion as one that did not raise with particularity the issues concerning sufficiency of the prima facie case).

The circuit court denied the motions, but did direct the state to remove from the jury instructions those alternative methods of violation of the statutes that were not supported by the evidence.  The jury was later instructed at to Count 1 that to convict Petitioner of trafficking, the jury must find that Petitioner knowingly manufactured or possessed the cocaine.  "Manufacture" was defined as "preparation, packaging, labeling or relabeling or processing of a controlled substance."  Ex. E at 305.  "Possess" was defined as "to have personal charge of or exercise the right

of ownership, management or control over the thing possessed" and that

"[p]ossession may be actual or constructive."  Actual and constructive

possession, including joint possession, were then defined.  Ex. E at 305-06.

During deliberations, the jury presented a question asking "If cocaine

was not found in house . . . (Carl's), can this be considered trafficking or

just conspiracy?"  Ex. E at 329.  The response from the trial court to the

jury, with concurrence of counsel, was to refer to the jury instructions

provided and make a determination of the facts.  Ex. E at 334.  After

deliberating further, the jury returned a verdict on Count 1 for the lesser

included offense of possession of cocaine with the intent to sell,

manufacture or deliver.  Ex. E at 335.  The jury found Petitioner guilty of

Count 3 as charged.  Ex. E at 335.

When the post-conviction court denied the claim that trial counsel

was deficient in making the motion for judgment of acquittal, the court also

noted that the evidence was sufficient to send the charges to the jury, and

that a motion for judgment of acquittal should not be granted unless there is

no view of the evidence that the jury might take that is favorable to the

opposite party and which can be sustained under the law.  Ex. L at 132.

To present a facially sufficient post-conviction claim that counsel was

ineffective in failing to raise and preserve a sufficiency of the evidence

claim in a motion for judgment of acquittal, "a movant should state sufficient facts to show that '[he] may very well have prevailed on a more artfully presented motion for acquittal based upon the evidence he alleges was presented against him at trial.' " Neal v. State, 854 So. 2d 666, 670 (Fla. 2d DCA 2003) (quoting Boykin v. State, 725 So. 2d 1203, 1203 (Fla. 2d DCA 1999)).  "Where there is no showing that a motion for judgment of acquittal had a likelihood of success, a movant has not presented a facially sufficient claim for ineffectiveness of counsel." Neal, 854 So. 2d at 670

The facts asserted by Petitioner to support his claim that had a more thorough motion been made, the outcome of the trial would have been different consist of conclusory allegations that no testimony was presented that the cocaine found in Stanley's house was possessed by Petitioner, and that no evidence was presented that Petitioner had actual or constructive possession of the wrappings and tape found in the trash at his own home. ECF No. 1 at 25.  The evidence that was presented was sufficient for Counts 1 and 3 to go to the jury and for the jury to find Petitioner guilty of possession of cocaine and conspiracy to traffic in cocaine.

Christopher Stanley testified that in April 2006 he was living on New York Drive in Escambia County, Florida, across the street from his brother. Ex. D at 158-59.  Stanley testified that he received a kilogram of cocaine

prior to April 3, 2006, which came from Louisiana wrapped in plastic wrap and duct tape.  The cocaine was then broken down and put into baggies.  Ex. D at 160-61.

Kelly Dede testified about the telephone call she made to Stanley on April 2, 2006, which had been recorded by FDLE.  Ex. D at 163.  In the recorded call, Stanley asked Dede where Petitioner was and her response was that he was "right here."  Dede was at Petitioner's house at the time.  Stanley told Dede to ask Petitioner if he "did that" to which his answer was, "Ran out of bags, stopped at 24."  Ex. D at 164.  Dede testified that it was Petitioner who told her what answers to relate back to Stanley in the recorded call, including that he ran out of bags.  Ex. D at 151.  Dede described the bags as sandwich bags to put cocaine in, and she saw cocaine in sandwich bags as she was leaving Petitioner's house.  Ex. D at 151.  In a second telephone call on April 2, 2006, which was played for the jury, Dede identified the voices as those of Petitioner and Stanley.  Ex. D at 187.  In that call, Stanley asked "where's it at?" and the response, identified as Petitioner's, was "Over here."  The voice identified as Stanley then said I am going to send the rest of them bags over by Ruff."  The voice identified as Petitioner's said, "I had to stop.  I did half.  Then I stopped and ate, then I did the rest.  I had to stop."  Petitioner then told Stanley he was "loaded."

Ex. E at 187.  Twenty-seven bags of cocaine were found the next day at

Stanley's house.  This evidence, combined with evidence that plastic

wrapping with cocaine residue and tape—the types of material used to seal

up cocaine bricks—were found in the trash at Petitioner's home, was

sufficient to allow the jury to determine if Petitioner was guilty of the

allegations in Count 1 and Count 3.

The Eleventh Circuit explained in United States v. Funt, 896 F.2d

1288, 1291-92 (11th Cir. 1990):

> In reviewing a challenge to the sufficiency of the evidence this
> court must take the evidence in the light most favorable to the
> government.  Hamling v. United States, 418 U.S. 87 (1974).
> Credibility choices and the weighing of evidence must be
> resolved in favor of the jury's verdict.  Glasser v. United States,
> 315 U.S. 60 (1942).  In short, so long as a reasonable juror
> could conclude that the evidence, viewed with all reasonable
> inferences drawn in favor of the government, established the
> defendant's guilt beyond a reasonable doubt, then the
> conviction will withstand a sufficiency challenge.  It is not
> necessary, however, that every hypothesis of innocence be
> disproven as the jury "is free to choose among reasonable
> constructions of the evidence."

Funt, 896 F.2d at 1291-92 (some citations omitted).  The Eleventh Circuit

further explained that in reviewing denial of a motion for judgment of

acquittal:

>  "The question is whether reasonable minds could have found
> guilt beyond a reasonable doubt, not whether reasonable minds
> must have found guilt beyond a reasonable doubt."  United
> States v. Bacon, 598 F.3d 772, 775 (11th Cir. 2010) (quoting

United States v. Ellisor, 522 F.3d 1255, 1271 (11th Cir. 2008))
(emphasis in original omitted). Accordingly,

> [i]t is not necessary for the evidence to exclude
> every reasonable hypothesis of innocence or be
> wholly inconsistent with every conclusion except
> that of guilt . . . . The jury is free to choose between
> or among the reasonable conclusions to be drawn
> from the evidence presented at trial, and the court
> must accept all reasonable inferences and
> credibility determinations made by the jury.

> United States v. Garcia, 447 F.3d 1327, 1334 (11th Cir. 2006)
> (internal quotations and citations omitted). We are "bound by
> the jury's credibility choices, and by its rejection of the
> inferences raised by the defendant."

United States v. Broughton, 689 F.3d 1260, 1276-77 (11th Cir. 2012)

(some citations omitted).

Even if there were conflicts in the testimony at trial, credibility and the

probative force of conflicting testimony should not be determined on a

motion for judgment of acquittal. Lynch v. State, 293 So. 2d 44, 45 (Fla.

1974). In moving for a judgment of acquittal, the movant admits every

conclusion favorable to the adverse party that a jury might fairly infer from

the evidence. Id. The evidence presented at Petitioner's trial, when

viewed under the above-cited tests, was sufficient for presentation of the

charges to the jury. Even if trial counsel had argued more forcefully or in

more detail, there is no reasonable likelihood that the trial court would have

granted a judgment of acquittal in the case based on the evidence

presented and the reasonable inferences and credibility determinations that the jury was entitled to make.

Petitioner also contends that the motion for judgment of acquittal failed to preserve the issue of sufficiency of evidence for appellate review. On direct appeal, Petitioner did raise an issue of sufficiency of the evidence, albeit only for Count 3, and the State addressed the merits of that motion. *See* Ex. G at 15; Ex. H at 8-15. The state district court of appeal affirmed without opinion. Ex. I. *See, e.g.* Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1227 (11th Cir. 2012) (citing Stephens v. State, 787 So. 2d 747, 754 (Fla. 2001) (state post-conviction court concluded that petitioner was not prejudiced by counsel's "bare bones" motion for JOA because on direct appeal, court recognized lack of preservation but addressed the merits and affirmed). Further, alleged prejudice arising from ineffective assistance of counsel under the second prong of Strickland "is assessed based upon its effect on the results of the trial, not its effect on appeal. Strobridge v. State, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009) (citing Carratelli, 961 So. 2d at 323). Therefore, Petitioner has failed to demonstrate both deficiency and prejudice as is necessary for a finding that trial counsel provided ineffective assistance in presenting the motion for judgment of acquittal.

The state circuit court found counsel was not deficient in presenting the motion for judgment of acquittal and the state district court of appeal affirmed.  These rulings have not been shown to be contrary to, or involving an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Nor has Petitioner shown that the rulings were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  For these reasons, habeas review as to Ground 3 should be denied.

### **Ground 4: Counsel's Failures in regard to Jury Instructions**

Petitioner next contends that trial counsel rendered ineffective assistance by failing to object to an erroneous jury instruction and by failing to request a special instruction on the law of constructive possession as it pertains to joint possession of the premises, and further failing to preserve the issue for appellate review.  ECF No. 1 at 27.  He contends that the standard jury instruction on constructive possession, which was given without objection, was insufficient to accurately inform the jury of what the State had to prove.  Petitioner argues that counsel should have requested a special jury instruction on constructive possession as it pertains to joint

possession of the premises, not just joint possession of the article or the contraband.  ECF No. 1 at 28.

Petitioner contends that a special instruction stating the elements of knowledge and ability to control the premises would have been necessary to guide the jury in determining if the wrapping with cocaine residue found in the trash can was jointly possessed by Petitioner, his wife, and Raymond Green.  He argues that the jury should have been instructed that where the possession of the premises is joint, the knowledge of the contraband's presence and ability to control it may not be inferred but must be by independent proof.  ECF No. 1 at 28.  Petitioner argues that without a special jury instruction, the jury may have found him in constructive possession of the cocaine based only on joint possession of the premises.

The circuit court denied this claim, noting that the State's theory was "actual" possession of cocaine by virtue of Petitioner's repackaging the cocaine into sandwich bags, and that counsel was not deficient in failing to request a special instruction on constructive possession as it pertains to joint possession of the premises.  The circuit court order stated in pertinent part:

> [T]he Court finds that counsel was not ineffective in failing to object to standard jury instructions. . . .
> Furthermore, the State's theory at trial, based on the evidence presented, was that Defendant *actually* possessed

cocaine by breaking it down and placing it in sandwich bags. Thus, under the facts of this case, Defendant was not prejudiced within the meaning of Strickland by any flaw in the standard instruction on constructive possession. Defendant was not deprived of a fair trial due to counsel's failure to object to the standard instruction on constructive possession.

Ex. L at 132-33. The circuit court, citing Sundin v. State, 27 So. 3d 675, 676 (Fla. 2d DCA 2009), noted that "[p]ossession is actual when the contraband is (1) in the defendant's hand or on his person, (2) in a container in the defendant's hand or on his person, or (3) within the defendant's ' "ready reach" ' and the contraband is under his control." Ex. L at 132-33. The state First District Court of Appeal affirmed the denial of relief on this claim. These rulings are entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d); Richter, 562 U.S. at 101. "The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* Moreover, "[i]f fair-minded jurists could disagree as to that decision's soundness, the state court's application of Strickland cannot be said to be unreasonable, and AEDPA precludes the grant of habeas relief." Conrad v. Sec'y, Florida Dep't of Corr., No. 13-15679, 2016 WL 4698941, at *3 (11th Cir. Sept. 8, 2016) (unpublished) (citing Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1326-27 (11th Cir. 2013) (en banc)).

Respondent contends that the jury must have concluded that Petitioner was the one who divided the kilo of cocaine into one-ounce amounts, which would have required actual possession.  ECF No. 8 at 10. Respondent also contends that the standard instructions were proper, in part, because the jury was first instructed on actual possession, and was further instructed as to constructive possession that if the person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed.  ECF No. 8 at 11.

To show that counsel was ineffective for not objecting to a jury instruction, the Petitioner must show that the instruction was improper, that a reasonably competent attorney would have objected to the instruction, and that the failure to object prejudiced him.  Daugherty v. Dugger, 839 F.2d 1426, 1428 (11th Cir. 1988).  Petitioner contends that the standard instruction was not sufficient to address the circumstances of his case and that a more detailed instruction regarding joint possession of the premises was required.  As the circuit court noted, however, the State's theory of the case was not guilt by joint possession of the premises, but guilt by actual possession of the cocaine when Petitioner broke down the kilogram of cocaine into one-ounce portion and placed those portions into sandwich bags.

The jury was instructed as to Count 1, in part, as follows:

To prove the crime of trafficking in cocaine the state must prove the following 4 elements beyond a reasonable doubt:

1. They must prove that Carlton Edward Eugene knowingly manufactured or possessed certain substance.

2. The substance was cocaine or a mixture containing cocaine.

3. That the quantity of the substance involved was 28 grams or more.

4. That Carlton Edward Eugene knew that the substance was cocaine or a mixture containing cocaine.

Manufacture means the preparation, packaging, labeling or relabeling or processing of a controlled substance either directly or indirectly.

To possess means to have personal charge of or exercise the right of ownership, management or control over the thing.

Possession may be actual or constructive.

Actual possession means the thing is in the hand of or on the person, or the thing is in a container in the hand of or on the person, or the thing is so close as to be within the ready reach and is under the control of the person.

. . . .

Constructive possession means the thing is in a place over which the person has control over in which the person has concealed it. If a thing is in a place over which the person does not have control, in order to establish constructive possession the state must prove the person's control over the thing, that's direct knowledge of the elicit nature of the thing.

Possession may be joint, that is 2 or more persons may jointly have possession of it. In that case each of those persons is considered to be in possession of that article. . . . If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed.

Ex. E at 305-307.  The trial court further instructed the jury on the lesser

included offense of possession with intent to sell, manufacture or deliver.

As part of that instruction, the court instructed the jury that the definitions of

manufacture and deliver remain the same as previously instructed.  Ex. E

at 308.  The trial court also instructed the jury as to possession of cocaine

as follows:

> To prove the crime of possession of cocaine the state
> must prove the following 3 elements beyond a reasonable
> doubt:
>
> 1. That Mr. Carlton Edward Eugene possessed a certain
> substance.
>
> 2. The substance was cocaine.
>
> 3. That Carlton Edward Eugene had knowledge of the
> presence of the substance.
>
> The definition of possess is as I have previously defined.

Ex. E at 309.

The State argued to the jury in closing:  "Here is the sole issue in the

case.  Did the defendant have possession of, repackage or participate in

the repackaging of, the kilogram quantity of cocaine?  That's the whole

issue in this case.  Was he involved?  The answer from the state's

perspective is, yes, he is."  Ex. E at 284.  To support this argument, the

State cited the first recorded telephone call in which Eugene relayed his

answer to Stanley that he had run out of bags and stopped at 24, and cited

evidence that the only bags found by law enforcement in the search of Stanley's residence were 27 bags of cocaine.  Ex. E at 286-88.  The prosecutor argued to the jury, "That's what Carlton Eugene was doing that night, putting the cocaine in these baggies for his brother, 27 of them, that weigh 736 grams.  All the evidence points to Mr. Eugene being the one involved."  Ex. E at 293.  As to Count 1, the jury found Petitioner guilty of the lesser included offense of possession of cocaine with intent to sell, manufacture or deliver, a lesser included offense.  Ex. A at 54.

The initial determination of the applicable substantive law in each case should be made by the trial judge and the judge is charged with correctly instructing the jury in each case.  Matter of Use by Trial Courts of Standard Jury Instructions in Criminal Cases, 431 So. 2d 594, 598 (Fla. 1981).  Florida's standard jury instructions are presumed correct and are preferred over special instructions.  Gutierrez v. State, 177 So. 3d 226, 230 (Fla. 2015).  Florida courts are generally required to adhere to the standard jury instructions if the court determines they accurately and adequately state the relevant law unless the judge determines the instruction does not accurately and adequately state the relevant law.  Moody v. State, 359 So. 2d 557, 560 (Fla. 4th DCA 1978).  Counsel cannot be ineffective under

Strickland for failing to object to jury instructions that are proper. *See*

Downs v. State, 740 So. 2d 506, 518 (Fla. 1999).

Petitioner also contends that trial counsel was deficient for failing to request a special jury instruction concerning joint possession of the premises. "Whether defense counsel erred by not requesting a specific jury instruction depends on the state law that governed the defendant's trial." Brown v. Warden, 562 F. App'x 779, 781 (11th Cir. 2014) (unpublished) (citing Williams v. Allen, 598 F.3d 778, 800-02 (11th Cir. 2010) (in a habeas corpus action, relying on state law to establish whether jury instructions were properly given)). Petitioner has failed to establish that the standard instructions given in the case were inaccurate or insufficient in light of the evidence presented and that a special instruction on constructive possession as it relates to joint possession of the real property was necessary.

Accordingly, Petitioner has failed to show that no "fairminded jurist" could have concluded, as the Florida courts did, that Petitioner failed to carry his burden of showing counsel performed incompetently by not requesting a special instruction. *See* Richter, 562 U.S. at 102. Nor has he shown that the Florida courts' determination of this ineffective assistance of counsel issue was so unjustified that it "was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *See Id.* at 103; *accord* <u>Bobby v. Dixon</u>, 565 U.S. 23, 24 (2011) (per curiam); *see also* <u>Holsey v. Warden, Ga. Diagnostic Prison</u>, 694 F.3d 1230, 1258 (11th Cir. 2012).

Even if it could be said that counsel should have requested a special instruction on constructive possession, Petitioner has failed to satisfy the prejudice prong of <u>Strickland</u>. Not only must Petitioner satisfy the elements of <u>Strickland</u>, he must also show that the state court applied <u>Strickland</u> to the facts of his case in "an objectively unreasonable manner." <u>Williams</u>, 598 F.3d at 789. As the post-conviction court found, the State prosecuted the case primarily on an actual possession theory—relying heavily on the evidence from the intercepted phone calls and Dede's testimony that Petitioner was responsible for breaking down the kilogram brick of cocaine and placing it into sandwich bags. Evidence supported this theory, including that Petitioner relayed to Stanley that he had run out of bags and had done only 24 of them. Dede testified that the bags referred to were sandwich bags used for repackaging cocaine. Wrapping with cocaine residue and duct tape consistent with that which would wrap a brick of cocaine was found in Petitioner's trash.

The jury instructions defined "possess" as "to have personal charge of or exercise of the right of ownership, management or control over the thing possessed." And "manufacture" was defined as the "preparation, packaging, labeling or relabeling or processing of a controlled substance either directly or indirectly." Ex. E at 305. The jury's verdict, based on guidance provided by the standard jury instructions, finding Petitioner guilty of the lesser included offense of possession of cocaine with intent to sell, manufacture or deliver, was in accord with the jury instructions. Thus, Petitioner cannot demonstrate a reasonable probability that, but for counsel's alleged error in failing to request a special jury instruction concerning joint possession of the premises, the result of the trial would have been different—a reasonable probability being one sufficient to undermine the Court's confidence in the outcome. Strickland, 466 U.S. at 694. Further, Petitioner has not demonstrated that the state courts applied Strickland in an unreasonable manner in light of the facts of this case.

For the foregoing reasons, Petitioner has failed to demonstrate that the state courts' adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, or that it was an unreasonable application of the facts in light of the state court record. Habeas relief on Ground 4 should, therefore, be denied.

## Ground 5: Counsel's Failure to File a Motion for New Trial

In this claim, Petitioner contends that trial counsel rendered ineffective assistance by failing to file a motion for a new trial pursuant to Florida Rule of Criminal Procedure 3.600(a)(2) in order to challenge the weight of the evidence to support the verdict. ECF No. 1 at 30. He argues that the State's case hinged on the testimony of Kelly Dede, who testified that she never saw Petitioner with cocaine, and hearsay testimony concerning Petitioner's involvement, which was admitted after Christopher Stanley testified Petitioner was not involved. Petitioner contends that no direct evidence linked him with the 27 bags of cocaine found in Stanley's home. He concludes that the jury's verdict of possession with intent to sell was in direct contradiction to the weight of the evidence. ECF No. 1 at 30.

Respondent contends that the claim of ineffective assistance of counsel is simply an attempt to "dress up a different issue of state law" as one of constitutional dimensions. ECF No. 8 at 12-13. Petitioner's claim, however, is one of ineffective assistance of counsel and not a state law claim "dressed up" as a constitutional claim. That being so, the merits of that claim will be discussed.

The state post-conviction court denied this claim, concluding that trial counsel was not deficient for failing to challenge the weight of the evidence

in a motion for new trial because the jury's verdict was not contrary to the weight of the evidence.  Ex. L at 133.  The state court cited the testimony of the witness most favorable to Petitioner—Christopher Stanley—and noted that he was not credible.  The court cited the recorded telephone calls as proof that Petitioner knew what he was doing with the kilo of cocaine.  The state court further concluded based on the record before the court that, even if counsel had moved for a new trial based on the weight of the evidence, a new trial would not have been granted.  Ex. L at 133-34.  The state First District Court of Appeal affirmed denial of relief.  These rulings are entitled to AEDPA deference.  *See* 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 101.

Petitioner makes conclusory allegations that the weight of the evidence was insufficient, primarily because there was evidence adduced that was somewhat favorable to him and because prior statements by Stanley to Agent Lawson were, in his view, improperly admitted.  He contends there was never an agreement proven at trial to support the charge of conspiracy.  These conclusory allegations do not establish that if a motion for new trial been filed, a new trial would have been granted.  Moreover, conclusory allegations of ineffective assistance of counsel are

insufficient to raise a constitutional issue.  Tejada v. Dugger, 941 F.2d
1551, 1559 (11th Cir. 1991).

The weight of the evidence standard used in evaluating a motion for
new trial tests whether a greater amount of credible evidence supports one
side of an issue or the other.  Tibbs v. State, 397 So. 2d 1120, 1123 (Fla.
1981); State v. Shearod, 992 So. 2d 900, 904 (Fla. 2d DCA 2008); Geibel
v. State, 817 So. 2d 1042, 1044 (Fla. 2d DCA 2002).  Had a motion for new
trial been made and reviewed under this standard, the record demonstrates
that the greater amount of credible evidence would have supported the
verdict finding Petitioner guilty and would have resulted in a denial of a new
trial.

Prejudice is not to be presumed by failure to file a motion for new
trial.  *See* Jewson v. Crosby, No. 3:04cv71, 2005 WL 1684209, at *7-*8
(N.D. Fla. Mar. 11, 2005), adopted, 2005 WL 1692617 (N.D. Fla. June 16,
2005) (unreported) (no presumption of prejudice from counsel's failure to
file a motion for new trial which foreclosed review of weight of evidence).
The Supreme Court has emphasized that the majority of ineffective
assistance of counsel claims are governed by Strickland, and that a
presumed prejudice standard is applicable only in a few very narrowly
circumscribed circumstances.  *See, e.g.*, Conklin v. Shofield, 366 F.3d

1191, 1201 (11th Cir. 2004) (citing United States v. Cronic, 466 U.S. 648, 659-60 (1984), and noting that a showing of prejudice is unnecessary only in certain limited situations: (1) complete denial of counsel; (2) where accused is denied counsel at critical stage; (3) where counsel entirely fails to subject case to adversarial testing; and (4) where circumstances are so prejudiced against the defendant that competent counsel could not render effective assistance).

By failing to demonstrate a reasonable probability that but for counsel's alleged error, a new trial would have been granted, Petitioner has not established the prejudice prong of Strickland. Thus, there is no reason to reach an express decision on the deficiency prong of Strickland. The Supreme Court has explained that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* Prejudice has not been demonstrated in this case—thus ineffectiveness of counsel has not been proven.

Accordingly, Petitioner has not demonstrated that the state courts' adjudication of this claim was an unreasonable application of <u>Strickland</u> in light of the state court record.  Petitioner has failed to demonstrate, as required by 28 U.S.C. § 2254 that the state courts' adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, or that it was an unreasonable application of the facts in light of the state court record.  Habeas relief on Ground 5 should, therefore, be denied.

### **Ground 6: Counsel's Failure to Timely File a Motion to Suppress**

Petitioner next contends that his trial counsel was ineffective in failing to timely file a motion to suppress the evidence relied on in this case.  ECF No. 1 at 31.  He argues that his counsel failed to investigate whether the search warrant affidavit contained probable cause for issuance of the warrant, and that the facts set forth in the affidavit did not support the issuance of a search warrant for Petitioner's residence.  ECF No. 1 at 33. He further contends that the plastic wrap, packaging tape, Wal-Mart bag, and fabric softener sheets seized from his trash can on April 3, 2006, which were used to link Petitioner to the 27 bags of cocaine found at Christopher Stanley's house, would have been suppressed.

The Respondent adopts the post-conviction court's order and

contends that the police had ample probable cause to issue a search

warrant for Petitioner's residence, and any motion to suppress would have

been denied.  ECF No. 8 at 13.  The post-conviction court denied the claim

of ineffective assistance of counsel, stating in pertinent part:

> The record demonstrates the search warrant was supported by probable cause, as demonstrated by the recorded telephone conversations, and the circumstances surrounding them, involving Defendant and Mr. Stanley.  Attachment 4.[10] Accordingly, the record conclusively demonstrates that Defendant is not entitled to relief on this claim.  "A search and seizure is reasonable if it is conducted pursuant to a valid warrant or with valid consent."  State v. Young, 974 So. 2d 601 (Fla. 1st DCA 2008).
>
> It should be remembered that probable cause is a reasonable ground of suspicion supported by circumstances strong enough in themselves to warrant a cautious person in belief that the named suspect is guilty of the offense charged. Johnson v. State, 660 So. 2d 648 (Fla. 1995).  The fact that the affidavit was not meticulously detailed as to every possible piece of information law enforcement could have had concerning the activities at 700 New York Drive would not give Defendant's counsel grounds for contending that the affidavit contained false or misleading information.  The "omitted" material described by Defendant would not have defeated probable cause.  See Johnson v. State, 660 So. 2d 648 (Fla. 1995).

Ex. L at 134-35.  The alleged "omitted" material cited by the court was

described by Petitioner as information concerning whether the person

_____

10 Attachment 4 to the post-conviction court's order is the search warrant, return, and affidavit for search warrant.  Ex. L at 245-270.

matching Petitioner's description left or stayed in the residence at 700 New York Drive during the surveillance when Stanley arrived and departed; information concerning the time frame for Stanley's whereabouts at the time of the recorded calls; whether Stanley ever entered Petitioner's home; and whether the unidentified black male mentioned in the affidavit matched Petitioner's description.  ECF No. 1 at 33-34.

The affidavit supporting the search warrant is lengthy, detailing a long investigation into a number or individuals and containing separate sections relating to different residences.  Ex. L at 245-270.  The affidavit described Petitioner's residence, and alleged that Petitioner and other unknown persons occupy or control the premises, and that on the premises were being kept certain items of contraband, including cocaine and marijuana. Ex. L at 249.  The facts stated in support of this allegation included a detailed explanation that an ongoing investigation had been undertaken for a lengthy period of time into an individual named Jermaine Stallworth.  Ex. L at 250.  A confidential informant purchased cocaine, marijuana, and ecstacy from Stallworth, and cell phone interception was authorized.  That interception revealed that Christopher Stanley was a source of the cocaine. Interception of Stanley's cell phone calls was authorized and calls were recorded with a number of individuals, including Petitioner.  Ex. L at 250.

Intercepted calls also revealed several locations where controlled substances or proceeds were stored.  Ex. L at 251.  The affidavit described two of the locations as including Stanley's home.  Ex. L at 255.

The affidavit alleged that in the intercepted calls between Stanley and Stallworth, the parties discussed numerous instances of buying and selling cocaine.  Ex. L at 256.  Petitioner's residence was specifically identified in the affidavit, which alleged that during surveillance, law enforcement observed two black females walking back and forth between Stanley's and Petitioner's residence.  A black male was also seen walking between both residences.  Ex. L at 257.  Records revealed the residence was occupied by Petitioner and his wife, and that Stanley, Petitioner and his wife all had previous addresses in Louisiana, which was determined to be the origin of the cocaine.

The affidavit related that on March 28, 2006, intercepted calls indicated that Stanley had received a shipment of cocaine.  Ex. L at 257-58.  On April 2, 2006, several intercepted telephone calls by Stanley advised people in Pensacola that he received the shipment and was ready to begin selling.  Ex. L at 258.  The affidavit alleged that on April 2, 2006, two intercepted calls involved Petitioner.  One was between Stanley and a female in which Stanley asked, "Where's Carl at?"  The female answered

that Carl was there with her.  As Stanley requested, the female asked Carl [Petitioner] if he "did that already," to which Petitioner responded through her that he ran out of bags at 24.  Ex. L at 258.  The affiant stated that from training and experience, and knowledge of the investigation, this meant cocaine was being bagged for sale in plastic bags and that Petitioner was bagging ounces for Stanley.  Ex. L at 258.  The affidavit stated that after this call, Stanley called Stallworth and told him everything was ready for the cocaine sale.

The affidavit related the contents of a second call to a specific telephone number in which Stanley stated that he was going to send the rest of the bags over.  The affidavit alleged that records revealed that telephone number "was for 700 New York Drive," which was Petitioner's address.  Ex. L at 258.  The affidavit stated that surveillance of the premises showed a black male matching the description of Petitioner walking between his residence and the residence belonging to Stanley.  Stanley's car was seen leaving his own residence at 703 New York Drive, and returning to park directly at Petitioner's residence.  A short time later, Stanley and a black male walked from Petitioner's residence to Stanley's residence.  Ex. L at 258.

Case 3:15-cv-00073-MCR-CAS    Document 12    Filed 02/16/17    Page 60 of 66

Page **60** of **66**

The affidavit described numerous other intercepted calls and observations during surveillance that indicated Stanley was actively selling cocaine. Based on the entirety of the affidavit, it was alleged that the affiant had reason to believe, and does in fact believe, that inside the residence at 700 New York Drive, Petitioner's residence, certain listed items—cocaine, marijuana, drug paraphernalia and other items related to the purchase, manufacture, and distribution of controlled substances— were being used and kept in violation of chapter 893, Florida Statutes. Ex. L at 268. Based on this affidavit, a state circuit court judge issued a search warrant for Petitioner's residence.

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. The prerequisites for a valid search warrant are: (1) probable cause; (2) an oath or affirmation; (3) a particular description of the place to be searched; and (4) a particular description of the type of evidence sought. *See* Groh v. Ramirez, 540 U.S. 551, 557 (2004). "A police officer has probable cause to conduct a search when 'the facts available to [him] would 'warrant a [person] of reasonable caution in the belief' that contraband or evidence of a crime is present." Florida v. Harris, 133 S. Ct. 1050, 1055 (2013) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). The test for probable

cause "is not reducible to 'precise definition or quantification.' " Harris, 133

S. Ct. at 1055 (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)). "All

we have required is the kind of 'fair probability' on which 'reasonable and

prudent [people,] not legal technicians, act.' " Harris, 133 S. Ct. at 1055

(quoting Illinois v. Gates, 462 U.S. 213, 238, 231(1983)). The Court has

"rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a

more flexible, all-things-considered approach." Harris, 133 S. Ct. at 1055.

The Supreme Court has "consistently looked to the totality of the

circumstances." *Id.* "Probable cause to support a search warrant exists

when the totality of the circumstances allow a conclusion that there is a fair

probability of finding contraband or evidence at a particular location."

United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). Great

deference is given to a lower court judge's determination of probable

cause. *Id.* In evaluating an affidavit for a search warrant, the issuing

judge, a neutral and detached magistrate, is permitted to draw reasonable

inferences using common sense. Gates, 362 U.S. at 238-40.

The affidavit supporting the search warrant of Petitioner's premises

gave detailed information providing a basis for reasonable and prudent

persons to conclude that cocaine was being bagged for sale on or about

April 2, 2006, at Petitioner's residence. Petitioner claims that the affidavit

was faulty because the officer omitted necessary information, such as whether the person matching Petitioner's description left or stayed or was at the house at 700 New York Drive at the time of surveillance when Stanley arrived and departed.  The lack of that information does not eliminate or diminish the significance of the remaining facts set forth in the affidavit.  Those facts and circumstances and reasonable inferences arising therefrom, when considered in their totality, allow the conclusion that there was a fair probability contraband would be found on Petitioner's premises. Because the affidavit was sufficient to provide probable cause to search his residence, trial counsel was not deficient in failing to move to suppress the items found at Petitioner's residence.  Nor has prejudice under Strickland been shown.  Even if trial counsel had moved to suppress, there is no reasonable probability that the motion would have been granted in view of the level of detail and totality of the circumstances set forth in the affidavit.

The state post-conviction court denied this claim of ineffective assistance of counsel and the state district court of appeal affirmed.  As noted earlier, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher

threshold.' " <u>Mirzayance</u>, 556 U.S. at 123 (quoting <u>Schriro</u>, 550 U.S. at 473).  This showing has not been made.

Petitioner has not demonstrated as required by 28 U.S.C. § 2254(d) that the state courts' adjudication of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, or that it was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  For these reasons, Ground 6 should be denied.

## Cumulative Error

In an undesignated claim at the conclusion of Petitioner's § 2254 petition, he contends that the cumulative effect of the individual grounds stated above, when taken together in their totality, amounts to ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  ECF No. 1 at 35.  This claim should be denied. Although the Supreme Court has not directly addressed the cumulative error doctrine in the context of an ineffective assistance of counsel claim, it has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."  <u>Forrest v. Fla. Dep't of Corr.</u>, 342 F. App'x 560, 564-65 (11th Cir. 2009) (unpublished) (quoting

Cronic, 466 U.S. at 659 n.26).  Moreover, because each of the claims of

ineffective assistance of counsel fail, the cumulative error claim must fail.

*See* Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012);

Finch v. Sec'y, Dep't of Corr., 643 F. App'x 848, 853 (11th Cir.), cert.

denied, Finch v. Jones, 137 S. Ct. 519 (2016); Forrest, 342 F. App'x at 565.

For the foregoing reasons, this cumulative error claim should be denied.

## Conclusion

Based on the foregoing, Petitioner Carlton Edward Eugene, is not

entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF

No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United

States District Courts provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the

applicant," and if a certificate is issued "the court must state the specific

issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still

be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S.

473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on February 16, 2017.

**S/ Charles A. Stampelos__**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**